UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BELKIS S.,

                                      Plaintiff,

          v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                      Defendant.
_____

                                                                 <u>DECISION AND ORDER</u>

                                                                 20-CV-6804L

**INTRODUCTION**

Plaintiff brings this action under 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that she is not disabled under the Social Security Act.

Plaintiff originally applied for a period of disability and disability insurance benefits on August 29, 2014, alleging disability as of November 13, 2012. (Dkt. #12 at 924). Plaintiff's application was initially denied. After a hearing, ALJ Michael Carr issued a decision dated November 23, 2016, concluding that plaintiff was not disabled. (Dkt. #12 at 924-40). Plaintiff appealed to the Appeals Council, which denied review. Plaintiff thereafter appealed to this Court.

On April 2, 2019, the Court (Fitzsimmons, J.) reversed the Commissioner's decision, and remanded the matter for further proceedings. The Court found that ALJ Carr had overlooked progress reports and treatment records from two of plaintiff's treating physicians, as well as

objective findings contained in Workers' Compensation Board progress reports, and directed that this evidence be properly considered on remand. (Dkt. #12 at 964-84).

In the meantime, on August 10, 2018, a subsequent application for disability benefits made by plaintiff was granted, for the period beginning November 26, 2016, thus limiting the relevant time period for plaintiff's instant application from the alleged onset date of November 13, 2012 through November 25, 2016.

After reopening the record to admit additional evidence and holding a telephonic hearing on June 18, 2020, ALJ Brian Battles issued a new decision on August 5, 2020, again finding plaintiff not disabled. (Dkt. #12 at 840-54). This appeal followed.

The plaintiff has moved (Dkt. #13) for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, and requests that the matter be remanded for the calculation and payment of benefits. The Commissioner concedes that the decision-appealed-from is insufficiently supported, such that remand is required, but disagrees as to the proper remedy: the Commissioner has cross moved (Dkt. #19) for judgment remanding the matter for additional proceedings. For the reasons set forth below, the plaintiff's motion is granted, the Commissioner's cross motion is denied, and the matter is remanded for the calculation and payment of benefits.

## DISCUSSION

**I.     Applicable Standards**

A person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In order to determine whether a claimant is

disabled, an ALJ employs a consecutive five-step inquiry, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).

The Commissioner's decision that plaintiff was not disabled must be affirmed if it applies the correct legal standards and is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

## II.     The ALJ's Decision

The ALJ found that plaintiff had several severe impairments, consisting of degenerative disc disease, carpal tunnel syndrome, status post right knee surgery, and status post right shoulder surgery. (Dkt. #12 at 844).

Noting that plaintiff's complaints also included depression, the ALJ applied the special technique for mental impairments. He found that plaintiff had no limitation in understanding, remembering, and applying information, no limitation in social interaction, mild limitations in concentration, persistence, and pace, and a mild limitation in adapting and managing herself. The ALJ therefore concluded that plaintiff's depression was non-severe.

Upon review of the record, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could no more than occasionally operate hand controls with both upper extremities, and could no more than occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She could frequently reach and handle with her dominant right upper extremity. Plaintiff could never climb ropes, ladders, or scaffolds, or work in hazardous environments such as unprotected heights or near moving mechanical parts. Finally, plaintiff was limited to simple, routine, and repetitive tasks, to account for "subjective allegations of pain." (Dkt. #12 at 847).

When presented with this RFC, vocational expert Mark Tasso testified that a person with this RFC could perform the sedentary positions of addresser, umbrella tipper machine operator, and nut sorter. (Dkt. #12 at 853). The ALJ accordingly concluded that plaintiff, who at the alleged time of disability onset was a 49-year-old woman with a high school education and past relevant work as a nurse assistant, was not disabled.

### A.     The Treating Physician Rule

While subsequent changes to the regulations have altered the analysis for newer applications,[1] the applicable regulations at the time of the ALJ's decision required that, "the medical opinion of a claimant's treating physician is [to be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw*, 221 F.3d 126 at 134. In determining what weight to give a treating physician's opinion, the ALJ was required to consider: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the treating physician's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. 20 C.F.R. §404.1527(d). Further, the ALJ was required to articulate his reasons for assigning the weight that he gave to a treating physician's opinion. *See Shaw*, 221 F.3d 126 at 134. *See also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand") (internal quotations omitted). The ALJ's failure to apply these factors and provide reasons for the weight given to a treating physician's report is reversible error. *See Snell*, 177 F.3d 128 at 134.

The record before the ALJ included a medical source statement from plaintiff's treating physiatrist and neuromusculoskeletal specialist, Dr. Orsuville Cabatu, who began treating plaintiff

---

[1] A change to the Administration's regulations regarding the consideration of opinion evidence eliminated application of the "treating physician rule" for claims filed on or after March 27, 2017.

4

in or before November 2012. He opined on January 23, 2015 that plaintiff could occasionally lift up to five pounds (but only with her left arm), could sit for up to 30 minutes at a time for a total of 3-4 hours in an 8-hour workday, and could stand or walk for up to 15 minutes at a time for up to 1-2 hours each in a workday. Dr. Cabatu further indicated that plaintiff would need to stand or walk for 5 minutes after every period of sitting, could never push or pull with her arms, could never stoop, kneel, crouch, or crawl, and should avoid walking on rough or uneven surfaces, or using public transportation. (Dkt. #12 at 679-85).

The ALJ described Dr. Cabatu as a "medical source," but assigned his opinion "little weight," due to the fact that the RFC form was "largely checked boxes," which indicated limitations that were "generally inconsistent with [plaintiff's] generally normal physical examinations." (Dkt. #12 at 850).

Initially, the ALJ failed to properly assess the factors relevant to Dr. Cabatu's opinion, including his area of specialty (physiatry) or his years-long treatment history with plaintiff, focused upon plaintiff's back, neck, shoulder and knee disorders.

The ALJ also failed to provide good reasons for declining to credit Dr. Cabatu's opinion. Indeed, the treatment records cited by the ALJ in support of his suggestion that plaintiff had "normal physical examinations" do not reflect such findings at all. (Dkt. #12 at 850).[2]

---

[2] The records cited by the ALJ in support of his suggestion that plaintiff's exam findings were frequently "normal" contradict, rather than support, that finding. *See* Dkt. #12 at 226 (gynecologist treatment note observing normal posture and gait, but also muscle pain and loss of height); 458-89 (treatment notes observing antalgic gait, limited range of motion in spine and neck, neck spasms, back spasms, diminished spinal sensation, and limited range of motion in right shoulder); 589 (consultative exam showing normal gait, but limited shoulder range of motion and tenderness, and concluding that plaintiff has a "temporary partial disability"); 620 (examination noting tenderness and limited range of motion in right shoulder and spine, antalgic gait, back spasms, and diminished strength in right upper and lower extremities); 653-56 (finding limited range of motion in spine and right shoulder, and opining moderate postural limitations and marked limitations in lifting, carrying, reaching above the head, and use of the right arm); 706 (noting disc herniations at L3-4 and bulge at L5-S1, back spasms and limited range of motion, antalgic gait, diminished strength in right upper and lower extremities); 738-39 and 767-68 (complaints of pain, numbness and spasms in neck, shoulder, back, antalgic gait, limited range of motion in neck and back, diminished spinal sensation); 795 (visit to establish care with new family medicine provider, noting normal gait); 1094-97 (psychiatric examination finding no more than mild mental limitations); 1101 (noting limited spinal range of motion, positive straight leg raising tests).

Further, it is well settled that rejection of a medical opinion solely because it appears on a check-box form is inappropriate. *See Misty D. v. Commissioner*, 2021 U.S. Dist. LEXIS 84149 at *14 (W.D.N.Y. 2021) ("there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments") (quoting *Ruiz v. Saul*, 2020 U.S. Dist. LEXIS 52535 at *12 (W.D.N.Y. 2020)).

The error is compounded where, as here, the record contains treatment records and objective examination findings which establish and readily explain the basis for the limitations that were indicated on the opinion form. Dr. Cabatu consistently made objective findings of significantly limited range of motion in plaintiff's cervical and lumbar spine, right shoulder, and right knee, in addition to noting spinal tenderness and spasms, diminished sensation and weakness in plaintiff's right arm, and antalgic gait. (Dkt. #12 at 606-35, 706-16).

The exertional and postural limitations opined by Dr. Cabatu were also consistent with other evidence of record. Imaging studies as early as 2010 showed a right rotator cuff tear with impingement. (Dkt. #12 at 584-85). Spinal MRIs in 2013 documented disc bulges, herniations, and foraminal narrowing. (Dkt. #12 at 648). Although plaintiff underwent shoulder surgery and epidural steroid injections, she continued to exhibit marked range of motion limitations and pain in her back, neck, and right shoulder. (Dkt. #12 at 666-67). Examination findings of spinal range of motion deficits, diminished sensation and reflexes in plaintiff's extremities, spinal tenderness and spasms, antalgic gait, and limited range of motion and diminished strength in plaintiff's right upper extremity, appeared constantly in plaintiff's treatment records throughout the relevant period and beyond. (Dkt. #12 at 638-56, 692-94, 699-704, 748-70).

Dr. Cabatu's opinion was also consistent with other medical opinion evidence of record, the weighing of which was not sufficiently explained or supported by the ALJ. Dr. Karl Eurenius examined plaintiff on October 23, 2014, and observed slow gait, significantly limited range of spinal motion, limited range of motion in the right shoulder, and swelling in plaintiff's right knee. Dr. Eurenius opined that due to low back pain, right shoulder pain, and knee pain, plaintiff had "marked" limitations in lifting, carrying, reaching above the head, and handling objects with the right arm, "moderate" limitations in postural activities, and "mild to moderate" limitations in activities requiring movement of the head. (Dkt. #12 at 653-56).

The ALJ gave Dr. Eurenius's opinion "some" weight, on the grounds that it predated plaintiff's right knee surgery. (Dkt. #12 at 851). However, the ALJ provided no explanation for why he rejected the "marked" limitations in lifting, carrying, and use of the right arm that Dr. Eurenius described, nor did he indicate how plaintiff's knee surgery, or any other event arising between the time of Dr. Eurenius's examination and the relevant period, would have affected or undermined such limitations.

The ALJ's discounting of the opinion of agency physician Dr. S. Putcha was similarly not adequately explained or supported by the record. Dr. Putcha reviewed the record, and opined in August 2018 that plaintiff could stand and/or walk for no more than two hours total in a workday, and could no more than occasionally engage in postural activities, or engage in fine manipulation with her right hand. (Dkt. #12 at 994-1006).

The ALJ gave Dr. Putcha's opinion "little" weight, finding that "while [plaintiff] had moderate to severe [imaging study findings], surgery, and, at times, tenderness and reduced range of motion in her neck, reduced range of motion in her spine, and painful limited range of motion in her right shoulder, she also had *otherwise normal physical examinations*, and could therefore

7

perform sedentary work . . ." (Dkt. #12 at 849)(emphasis added). The ALJ's finding that plaintiff could perform a greater range of sedentary work than Dr. Putcha opined because plaintiff's examination findings were "otherwise normal" – "otherwise" apparently meaning, "except for the findings that supported the functional limitations identified by Dr. Putcha" – defies logic. Indeed, the portions of the record the ALJ cited in support of this finding did not show *any* wholly normal examinations relative to plaintiff's spine, neck, and right upper extremity. (Dkt. #12 at 850). *See generally Milliken v. Berryhill*, 2017 U.S. Dist. LEXIS 118950 at *49 (W.D.N.Y. 2017)("[o]ne does not need to be 'utterly incapacitated' in order to be disabled")(quoting *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)).

In summary, the ALJ's conclusory dismissal of Dr. Cabatu's opinion, without consideration of any of the factors relevant to the evaluation of a treating physician opinion, including Dr. Cabatu's area of specialty, his treatment history with plaintiff, and the consistency of his opinion with other evidence of record – including the opinions of other physicians – was error, and the ALJ failed to set forth any "good reason[]" for declining to grant it controlling weight. *See* 20 C.F.R. §404.1527(d)(2).

**B.     The Commissioner's Burden to Prove That Plaintiff Can Perform Work**

At step five of the disability determination, the Commissioner has the burden of proving that there are other jobs that plaintiff can perform, in light of her age, education, work experience, and RFC. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). That burden was not met here when the ALJ relied on testimony by a vocational expert to determine that plaintiff was "not disabled," because the hypothetical RFC that the vocational expert was given was based on an improperly-supported rejection of the treating physician's opinion, and other medical opinion evidence of record. As a result, the record does not provide substantial evidence that plaintiff can

perform other work. *See Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980); *Mathews v. Barnhart*, 220 F. Supp. 2d 171, 175-76 (W.D.N.Y. 2002).

Remand for the purpose of calculation of benefits is warranted where the record demonstrates the claimant's disability, and where there is no reason to conclude that there is additional evidence to support the Commissioner's claim that a claimant is not disabled. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose, a remand for calculation of benefits is appropriate); *Martinez v. Commissioner*, 262 F. Supp. 2d 40, 49 (W.D.N.Y. 2003) (same). That standard has been met here.

If the opinion of Dr. Cabatu is afforded controlling weight, it is undisputed that plaintiff cannot perform the lifting, carrying, or sitting requirements of sedentary work. (Dkt. #12 at 679-85). Despite the passage of seven years, two courses of proceedings, and a prior remand by this Court, the Commissioner has failed to meet her burden to set forth good reasons why the opinion of plaintiff's treating physician was not entitled to controlling weight, and/or to demonstrate that plaintiff can perform any work that exists in the economy. Indeed, the Commissioner openly concedes that the decision appealed-from is fatally flawed, and merely disagrees with plaintiff as to the proper remedy.[3]

The record is clear that if Dr. Cabatu's opinion controls, there were no jobs in the national economy that plaintiff could perform during the relevant period, from November 13, 2012 through

---

[3] The Commissioner argues that further proceedings are necessary because the ALJ acknowledged, but failed to weigh, two other additional medical opinions of record – a June 18, 2018 opinion from consulting internist Dr. Harbinder Toor specifying a wide variety of moderate exertional and postural limitations (Dkt. #12 at 1099-1102), and a June 18, 2018 opinion by consulting psychiatrist Dr. Adam Brownfeld which opined mild mental limitations (Dkt. #12 at 1094-96). Because I find that the ALJ's chief reversible error was his failure to give "good reasons" for declining to grant controlling weight to the opinion of Dr. Cabatu, and because the crediting of that opinion results in a finding of disability to the extent discussed above, the ALJ's failure to specify the particular weight given to the opinions of two non-treating physicians, rendered two years after the relevant period, does not dictate a different remedy.

November 25, 2016 (with the relevant period being so limited because plaintiff was found by the Commissioner, on a subsequent application, to be disabled as of November 26, 2016). Further, there is no reason to believe that further development of the record would support the Commissioner's disability finding. As such, additional proceedings would serve no proper purpose, and remand for the calculation and payment of benefits is warranted.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings remanding the matter for the calculation and payment of benefits (Dkt. #13) is granted, and the Commissioner's cross-motion for judgment remanding the matter for further proceedings (Dkt. #19) is denied. The Commissioner's decision that plaintiff was not disabled for the period from November 13, 2012 through November 25, 2016 is reversed, and the matter is remanded solely for the calculation and payment of benefits.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 12, 2022.